PALL CORPORATION, Plaintiff,

v.

PTI TECHNOLOGIES, INC., Defendant.

No. CV 97–1134(ADS).

United States District Court,
E.D. New York.

Jan. 24, 1998.

Leydig, Voit & Mayer, Ltd. by H. Michael Hartmann, Christopher T. Griffith, Steven H. Sklar, Chicago, IL, Rivkin, Radler & Kremer by James W. Weller, Uniondale, NY, for Plaintiff.

Pillsbury Madison & Sutro, LLP by Arthur Wineburg, H.T. Than, Washington, DC, Nixon, Hargrave, Devans & Doyle, LLP by Mitchell C. Shelowitz, Garden City, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In this patent infringement action, the defendant, PTI Technologies, Inc. ("PTI" or the "defendant"), moves to transfer the case to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

The plaintiff, Pall Corporation ("Pall" or the "plaintiff") is a New York corporation with a principal place of business in East Hills, New York. The defendant, PTI, is a Delaware corporation with a principal place of business in Newbury Park, California. The corporations are competitors in the business of manufacturing and selling various types of "filter cartridges," including fluoropolymer filter cartridges and filter cartridges containing micro-porous nylon membrane.

### A. The Central District of California Case

In 1993, Pall commenced a lawsuit against PTI in the Central District of California, raising five causes of action: a Federal patent infringement claim; claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125 and under California state law; and claims of intentional and negligent interference with a prospective economic advantage under California state law. *Pall Corp. v. PTI Technologies*, No. 93 Civ. 7459(JSL). These claims arise from Pall's ownership of United States Letters Patent No. 4,340,479 ("Pall's '479 Patent") for an invention called the "Process for Preparting Hydrophilic Polyamide Membrane Filter Media and Product." The gravamen of the complaint is that PTI was infringing on Pall's '479 Patent by manufacturing and selling filtration cartridges containing nylon membrane, and that PTI made false and misleading representations to Pall's customers and potential customers about Pall's product.

In its answer, PTI denied that it infringed Pall's 479 Patent, and asserted that Pall's patent was, in any event, invalid. PTI also filed a counterclaim, asserting that Pall was infringing on PTI's patent for "Fluorocarbon Filter Element," a product invented by Tokuya Miyagi and others and assigned to United States Letter Patent No. 4,633,041 (the "PTI '041 Patent" or the "PTI Miyagi Patent").

Apparently, the California action was placed on the "inactive" docket after the parties exchanged initial disclosures, while Pall actively pursued its claims regarding the '479 Patent against other defendants. The cases against the other defendants have since been resolved, and at time of the filing of this motion, the case against PTI has apparently not been restored to the "active" docket.

### B. The Eastern District of New York Case

On March 7, 1997, Pall initiated the case before the Court by filing a complaint alleging one cause of action against PTI for allegedly infringing United States Letters Patent No. 4,609,465, which was issued to John Miller and assigned to Pall (the "Pall '465 Patent" or "the Miller Patent"). According to Pall, its '465 Patent, which covered an invention entitled "Filter Cartridge with a Connector Seal," was infringed by Pall's manufacture and sale of a fluoropolymer filter cartridge. Once again, PTI filed a counterclaim, this time seeking a judgment declaring that: (1) "no product previously sold by PTI infringes any patent owned by Pall"; and (2) the Pall " '465 Patent is invalid and void on the ground that the purported invention does not meet the requirements specified in Section[s] 101 ... 102, 103 and 112" of Title 35 of the United States Code.

PTI now moves the Court for an order transferring this case to the Central District of California. Pall does not dispute that this case could have been brought in the Central District of California and that transfer is, therefore, possible. Instead, the dispute centers on whether transfer would be appropriate.

## II. DISCUSSION

A motion to transfer venue from one federal district court to another, when venue initially is proper, is governed by 28 U.S.C. § 1404(a), which provides in relevant part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil case to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). *See generally Filmline (Cross–Country) Prods., Inc. v. United Artists*, 865 F.2d 513, 520 (2d Cir. 1989).

"The goal of Section 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Wine Markets Int'l, Inc. v. Bass*, 939 F.Supp. 178, 179 (E.D.N.Y.1996) (internal quotations marks omitted) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964)); *see also Launer v. Buena Vista Winery, Inc.*, 916 F.Supp. 204 (E.D.N.Y.1996); *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983 (E.D.N.Y.1991).

The Court's inquiry on a motion to transfer is two-fold. The first issue is whether the action sought to be transferred is one that "might have been brought" in the district court in which the moving party seeks to have the case litigated, namely, the transferee court. If the initial threshold question is answered affirmatively, as the parties concede, then the court must examine whether, "the convenience of parties and witnesses" and "the interest of justice", weighs in favor of a transfer to the proposed district. *Laumann Mfg. Corp. v. Castings USA Inc.*, 913 F.Supp. 712, 720 (E.D.N.Y.1996); *Modern Computer Corp. v. Ma*, 862 F.Supp. 938, 947–48 (E.D.N.Y.1994); *Hernandez v. Graebel Van Lines*, 761 F.Supp. at 986.

The moving party has the "burden to *clearly establish* that a transfer is appropriate and that the motion should be granted." *Laumann Mfg. Corp.*, 913 F.Supp. at 720 (emphasis added) (quoting *Modern Computer Corp.*, 862 F.Supp. at 948). *See also Factors Etc. Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218–19 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Arrow Elec., Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 265 (S.D.N.Y.1989) (quoting *Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 712 (S.D.N.Y.1989)). The movant must support the motion with an affidavit containing *"detailed factual statements"* explaining why the transferee forum is more convenient, including "the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Laumann Mfg. Corp.*, 913 F.Supp. at 720 (emphasis added); *Modern Computer Corp.*, 862 F.Supp. at 948; *see also Factors*, 579 F.2d at 218; *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1321 (S.D.N.Y.1989).

"Courts have employed a variety of factors that serve as a guidepost in helping to determine whether to transfer a case to another district, none of which are singly

dispositive." *Modern Computer Corp.*, 862 F.Supp. at 948. The criteria include: (1) convenience of the parties; (2) convenience of witness; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiffs choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances. *Wine Markets Int'l*, 939 F.Supp. at 181; *Modern Computer Corp.*, 862 F.Supp. at 948; *Miller v. County of Passaic*, 699 F.Supp. 409, 411 (E.D.N.Y.1988) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1946)).

▮ Finally, the decision whether to transfer venue is left to the sound discretion of the district court. *Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir.1988); *Chichelo v. Hoffman–La Roche, Inc.*, No. 97 Civ. 4591, 1997 WL 654637 * 3 (S.D.N.Y. Oct.21, 1997); *Modern Computer Corp.*, 862 F.Supp. at 948. That discretion will not be disturbed on appeal absent a clear showing of abuse. *Filmline (Cross–Country) Prods., Inc.*, 865 F.2d at 520.

PTI advances several theories in favor of transfer, without supplying any supporting affidavits. For example, PTI maintains that the "convenience of the parties and the location of the witnesses and documents favor the California forum" because it "is located in California [and,] [a]lthough Pall is located in New York, its choice of forum is neutral since it initiated actions in both fora. PTI's witnesses and documents, and convenience strongly favor California." (Defendant's Memorandum of Law, at 5). The defendant also contends that "judicial economy" warrants transfer because "the [California and New York] cases are so closely related." (Defendant's Memorandum of Law, at 5). Specifically, the defendant asserts in its Memorandum of Law:

> Both the [defendant's] Miyagi patent [the subject of the defendant's counter-claim in the California lawsuit] and the [plaintiff's] Miller patent [the subject of the plaintiff's complaint in the New York case] cover fluorocarbon resin filters. The [defendant's] Miyagi patent has an effective U.S. filing date of May 8, 1994, and claims priority under 35 U.S.C. § 119.... On the other hand, the Miller patent has a U.S. filing date of May 21, 1994. Thus, the Miyagi patent predates the Miller patent, and on its face qualifies as prior art against the Miller patent under 35 U.S.C. § 102(e), *i.e.*, the validity of the Miller patent can be directly challenged by the existence of the Miyagi patent. As a defense in the instant action, PTI intends to assert the Miyagi patent to defeat the validity of the Miller patent.
>
> On the other hand, in the California action Pall will, if it were allowed, assert the Miller patent as prior art against the validity of the Miyagi patent.... A possible result is that only one patent, either Miyagi or Miller, will survive. Moreover in both actions, the priority of the patented inventions will be a significant issue. At a minimum, each party will attempt to use its patent to affect the scope of the other's claims.

(Defendant's Memorandum of Law, at 5). In further support of its "judicial economy" argument, the defendant insists that "much of the discovery will be common" to the two cases, including the "composition and methods of both parties' products, as well as their overall sales and competing in the marketplace ... Furthermore, in both actions, both parties' products, sales, profit margins and their respective shares of the fluorocarbon filter market will be relevant in the determination of the amount of damages." (Defendant's Memorandum of Law, at 6).

The Court now turns its attention to the applicable standards to determine whether PTI has met its burden of "clearly demonstrating" that transfer is appropriate.

**A. Convenience of the Parties**

The logical relevant starting point in determining the convenience of the parties is their residence. Pall is a New York corporation with its principal place of business in East

Hills, New York. PTI is a Delaware corporation with a principal place of business in Newbury Park California, located within the jurisdiction of the Central District of California. Obviously,New York is more convenient to the plaintiff, while California is more convenient to the defendants. "The trip from coast to coast is similarly inconvenient whether it is made from east to west or west to east." *Wine Markets Int'l,* 939 F.Supp. at 182. Accordingly, the defendant fails to demonstrate that this factor tips in favor of transfer.

### B. Relative Means of the Parties

The Court may also consider in determining whether to transfer whether a disparity between the parties exists with respect to their relative means, such as in the case of an individual plaintiff suing a large corporation. *See, e.g., National Utility Service, Inc. v. Queens Group, Inc.,* 857 F.Supp. 237, 242 (E.D.N.Y.1994); *Hernandez v. Graebel Van Lines,* 761 F.Supp. at 989–90. Since the defendant offers no argument or financial data in this regard, the Court has no way to assess whether one party's means are more limited than the other's. Accordingly, the defendant fails to demonstrate that this factor tips in favor of transfer.

### C. Locus of Operative Facts

Where the operative facts occurred is an obvious factor to consider. *See e.g., Fischer v. Enterprise Rent–A–Car,* No. 95 Civ. 4876, 1996 WL 251426, *4 (E.D.N.Y. April 24, 1996). This includes consideration of the relative ease of access to the sources of proof. *U.S. Fidelity and Guar. Co. v. Republic Drug Co., Inc.,* 800 F.Supp. 1076, 1081 (E.D.N.Y.1992) (citing *Y4 Design, Ltd. v. Regensteiner Publishing Enters., Inc.,* 428 F.Supp. 1067, 1069–70 (S.D.N.Y.1977)).

Weighing this factor does not result in a perceptible tilting of the scales. According to the complaint, the alleged patent infringement occurred "within this judicial district [the Eastern District of New York] and elsewhere." The defendant does not allege, nor does the defendant offer any evidence, that the operative facts occurred in California. While the defendant argues that PTI's relevant "documents" are located in California, it did not supply a supporting affidavit detailing the nature, extent, volume, or relevance of these "documents." Accordingly, the defendant fails to demonstrate that this factor tips in favor of transfer.

### D. The Plaintiff's Choice of Forum

█ In deciding a motion to transfer venue, the plaintiffs initial choice of forum is entitled to "great weight." *Miller,* 699 F.Supp. at 411. "Where the balance of convenience is in equipoise, plaintiffs choice of forum should not be disturbed." *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 936 (S.D.N.Y.1989) (quoting *Ayers v. Arabian Am. Oil Co.,* 571 F.Supp. 707, 709 (S.D.N.Y.1983)). "The courts of this Circuit are loath to disturb a plaintiffs choice of venue absent a showing that 'the balance of convenience and justice weighs heavily in favor of transfer.'" *National Utility Service,* 857 F.Supp. at 242 (quoting *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 908 (S.D.N.Y.1983)). Thus, where transfer merely serves to "shift the inconvenience from one party to the other, 'the plaintiff's choice of forum should not be disturbed.'" *Snyder v. Madera Broadcasting, Inc.,* 872 F.Supp. 1191, 1200 (E.D.N.Y.1995) (quoting *O'Brien v. Goldstar Technology, Inc.,* 812 F.Supp. 383 (W.D.N.Y.1993)).

█ The defendant contends—without elaboration or citation to any authority—that Pall's "choice of forum is neutral, since it initiated actions in both fora." The Court disagrees, especially in view of the dearth of legal authority for the proposition. In the Court's view, the fact that the plaintiff has a lawsuit pending in another jurisdiction is not dispositive in deciding whether to honor its choice of forum in this case. Accordingly, the defendant fails to demonstrate that this factor tips in favor of transfer.

### E. Calendar Congestion and the Forum Court's Familiarity with the Governing Law

The defendant offers no argument or affidavits in this regard. Accordingly, the de-

fendant fails to demonstrate that this factor tips in favor of transfer.

### F. Practical Difficulties

Once again, the defendant offers no affidavits or argument regarding this point. Accordingly, the defendant fails to demonstrate that this factor tips in favor of transfer.

### G. Attendance and Convenience of Non-party Witnesses

■ "Courts generally view the convenience of witnesses as the single most important factor in the balance." *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 183 (S.D.N.Y.1995) (citations omitted). "However, to prove that this element supports its position, the movant must supply an affidavit identifying witnesses and the probable subject matter of their testimony." *Micro–Assist, Inc. v. Cherry Communications, Inc.,* 961 F.Supp. 462, 466 (E.D.N.Y.1997) (citing *Haskel v. FPR Registry, Inc.,* 862 F.Supp. 909, 917 (E.D.N.Y.1994)). *See also Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.,* 829 F.Supp. 62, 66–67 (S.D.N.Y.1993) (To meet its burden of demonstrating that transfer is in the convenience of the witnesses, the party seeking transfer must "specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony ... Absent such a showing, the motion should be denied.").

■ As previously noted, PTI makes only a boilerplate argument that the location of its "witnesses ... strongly favor California." PTI does not provide the requisite supporting affidavits, a list of key witnesses who are located in California, a proffer of what their testimony will be, and why it would be inconvenient for any witness if the case remained in the Eastern District of New York. *See Factors,* 579 F.2d at 218. In sum, the defendant's contentions of increased convenience to the parties and witnesses are unsupported. Accordingly, the defendant fails to demonstrate that this factor tips in favor of transfer.

### H. Judicial Economy

■ It is well established that "[t]ransfer is particularly appropriate where there is a prior lawsuit pending in the transferee district involving the *same facts, transactions, or occurrences.*" *Levitt v. State of Maryland Deposit Ins. Fund Corp.,* 643 F.Supp. 1485, 1493 (E.D.N.Y.1986) (emphasis added); *see also, Nieves v. American Airlines,* 700 F.Supp. 769, 773 (S.D.N.Y.1988). The courts of this Circuit favor resolution of related claims in the same forum to promote "more efficient conduct of pretrial discovery, to save witnesses time and money in both trial and pretrial proceedings, and to avoid duplicative litigation and inconsistent results.'" *Coultman v. National Railroad Passenger Corp.,* 857 F.Supp. 231 (E.D.N.Y.1994) (quoting *Nieves,* 700 F.Supp. at 773). *See also Wyndham Assoc. v. Bintliff,* 398 F.2d 614, 619 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). "To permit a situation in which two cases involving the *same issues* are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent." *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960) (emphasis added). Based on these principles, courts recognize that "as a general proposition, cases should be transferred to the district where related actions are pending." *National Union Fire Ins. v. Turtur,* 743 F.Supp. 260, 263 (S.D.N.Y.1990) (internal quotation marks and citation omitted). Good

According to the defendant's Memorandum of Law, the California and New York cases are "closely related" because of the following: (1) "[b]oth the [defendant's] Miyagi patent [the subject of the defendant's counterclaim in the California lawsuit] and the [plaintiff's] Miller patent [the subject of the plaintiff's complaint in the New York case] cover fluorocarbon resin filters; (2) PTI "intends" to assert the Miyagi Patent to defeat the validity of the Miller Patent in the New York case; (3) Pall "will, if it were allowed, assert the Miller [P]atent as prior art against the validity of the Miyagi [P]atent" in the California case; (4) in both cases, the priority of the patented inventions will be a significant issue

and each party will attempt to use its patent to affect the scope of the other's claims; (5) "much of the discovery will be common," including the "composition and methods of both parties' products, as well as their overall sales and competing in the marketplace"; and (6) in both actions, the parties' products, sales, profit margins and respective shares of the fluorocarbon filter market will be relevant in determining damages." (Defendant's Memorandum of Law, at 6).

■■■ The Court rejects PTI's arguments for several reasons. Significantly, PTI has not submitted any affidavit in support of its contentions, which rely, in large measure, on factual allegations regarding anticipated trial strategies, evidentiary issues and discovery. Since those "facts" may not be raised in a Memorandum of Law, they are not properly before the Court and will not be considered. Nevertheless, even if PTI's "facts" are assumed, the Court does not conclude that the "*same facts, transactions, or occurrences*" are at issue in the California and New York cases. As Pall emphasizes in its opposition papers, a review of the complaints and counterclaims filed in the two cases reveals that "each action involves a separate and distinct invention, the invention being defined by the claims of each patent, the claims being separate and distinct from one another." (Plaintiff's Memorandum in Opposition, at 7). Another significant distinction between the two cases is that Pall has set forth five claims against PTI in the California action, ranging from a cause of action arising under the California unfair competition statute, to a claim of patent infringement of Pall's nylon membrane patent. All of these counts are unrelated to the Pall Miller patent asserted in the New York case. In addition, while PTI asserted seven affirmative defenses against the Pall Miller patent infringement claim in this case, none on their face have any relevance to the infringement and validity of the PTI Miyagi patent. The Court acknowledges that there may be some overlapping issues, such as the PTI Miyagi Patent as prior art to the Pall Miller patent, and the sales and structure of the products at issue. However, it cannot be gleaned from the record presently before the Court that

"*the same facts, transactions, or occurrences*" are at issue in both cases.

Finally, the Court rejects the plaintiff's insinuation that this Court should transfer the suit to avoid expending effort "educat[ing itself] on both the technology in general and the particular patents [involved in this] suit." (Defendant's Reply Memorandum of Law, at 4). It is the Court's function in every case to familiarize itself with the pertinent facts, data, technology and law. The Court should be capable of grasping the "notoriously difficult" (Defendant's Memorandum of Law, at 4) issues present in a patent case. *See, e.g., Stryker Corp. v. Intermedics Orthopedics, Inc.,* 891 F.Supp. 751 (E.D.N.Y.1995) (Spatt, J.), *affirmed,* 96 F.3d 1409 (Fed.Cir.1996). Accordingly, the defendant fails to demonstrate that this factor tips in favor of transfer.

### I. Interest of Justice

Balancing the material circumstances of this case in light of the factors set forth above, the Court finds that the defendant did not satisfy its burden of demonstrating that transfer is appropriate. The burden on the party seeking a transfer is a heavy one. Here, a "balance of [all] the factors does not result in a conclusive tipping toward the California forum." *Wine Markets Intl.,* 939 F.Supp. at 185. Accordingly, the defendant's motion for transfer is denied.

### III. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED, that the defendant's motion to transfer this case to the Central District of California is denied; and it is further

ORDERED, that the parties are directed to proceed with discovery forthwith.

SO ORDERED.